# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

TIMOTHY SCOTT MASON,
ADC #152030                                                                             PLAINTIFF

V.                                CASE NO. 4:16-CV-177-BD

DOC HOLLADAY, et al.                                            DEFENDANTS

## ORDER

### I. Background

Timothy Scott Mason, an Arkansas Department of Correction inmate formerly detained at the Pulaski County Regional Detention Facility ("Detention Facility"), filed this civil lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) Mr. Mason complains that Defendant Crockett used excessive force against him during his arrest and that Defendant Blocker failed to intervene to protect him. In addition, Mr. Mason alleges that Defendants Holladay and Morgan failed to adequately train Pulaski County ("County") officials.[1]

All Defendants have now moved for summary judgment on Mr. Mason's claims. (#161, #164) Mr. Mason has responded to the motions (#168), and Defendants have replied (#169).

### II. Discussion

   A. Standard

In a summary judgment, the Court rules in favor of a party before trial. A party is

---

[1] The Court previously dismissed Mr. Mason's claim that Defendants acted with deliberate indifference to his medical needs. (#151)

entitled to summary judgment if the evidence, viewed in a light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute about any fact important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

B. Factual Background

On November 13, 2015, Defendant Blocker initiated a traffic stop of Mr. Mason's vehicle for fictitious plates. (#166-1 at p.1) After Defendant Blocker identified Mr. Mason, he ran an ACIC/NCIC check and determined that there were two outstanding warrants for Mr. Mason's arrest. (*Id.*) At that point, Defendant Blocker attempted to place Mr. Mason under arrest. (*Id.*) Mr. Mason, however, refused to comply and fled. Defendant Blocker chased Mr. Mason on foot for approximately one-hundred yards.[2] (*Id.*; #166-2 at p.1) Defendant Blocker eventually employed the use of a taser and apprehended Mr. Mason without further incident. (#166-1 at p.1)

Defendant Crockett, Sergeant Brewer (not a party to this lawsuit), and emergency personnel then arrived on the scene. (#166-2 at p.1) The emergency personnel removed the taser prongs from Mr. Mason, conducted a medical assessment, and released Mr. Mason to the deputies. (*Id.*) Defendant Crockett placed Mr. Mason into his patrol car and transported him to the location of the initial stop. (#163-5 at p.65; #166-4 at p.17) When they arrived at the place of the initial stop, Defendant Crockett walked Mr. Mason to

---

[2] In his deposition, Mr. Mason testified that he fled on foot approximately three-hundred feet. (#166-4 at p.7)

Defendant Blocker's SUV. (#163-5 at p.66; #166-4 at p.17) Because Mr. Mason was unable to walk effectively after being tased, he was unable to step up into Defendant Blocker's SUV. Defendant Crockett, therefore, picked him up and placed him in the vehicle. (#166-4 at p.17) Defendant Blocker then transported Mr. Mason to the Detention Facility.

Upon arrival at the Detention Facility, a medical history and screening form was completed for Mr. Mason, during which he complained of wrist pain. Mr. Mason consistently complained of wrist pain during his detention. According to his medical records, on December 23, 2015, an x-ray of Mr. Mason's hand revealed that his wrist was sprained, rather than broken. (#163-8 at p.2) Mr. Mason was prescribed ibuprofen for pain and scheduled for a follow-up appointment. (*Id*.) Although Detention Facility officials requested an orthopedics appointment through the Arkansas Department of Correction, ADC officials denied the request. (#163-9 at p.6) Mr. Mason was placed in a half-cast for six weeks. (*Id*.)

    C. Defendant Crockett

For purposes of this motion, the Court will assume that Mr. Mason's allegations are true. According to Mr. Mason, he told Defendant Crockett that he could not get into Deputy Blocker's SUV because his legs were not functioning properly after being tased. Mr. Mason alleges that Defendant Crockett "grabbed me by the handcuffs, lifted me up, and threw me down like a sack of potatoes." (#166-4 at p.18) Mr. Mason explains that when that occurred, "my handcuff twisted, and I landed on this hand." (#163-5 at p.30; #166-4 at p.8)

3

Mr. Mason's excessive force claim against Defendant Crockett is analyzed under the reasonableness standard of the Fourth Amendment. *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011). Under the Fourth Amendment, the Court must determine "whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). This requires the Court to determine "whether a use of force was reasonable by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *McKenney*, 635 F.3d at 359 (internal quotation marks and citation omitted).

The degree of injury suffered is also relevant to the excessive force inquiry. *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009). The Court must be careful to analyze the facts without 20/20 hindsight, which is impermissible. *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)).

In *Blazek v. City of Iowa City*, the Eighth Circuit upheld the denial of qualified immunity to an officer regarding an excessive force claim arising from an arrest. 761 F.3d 920 (8th Cir. 2014). In that case, Mr. Blazek argued that, after he was subdued and compliant, officers "grabbed him by the arms and gratuitously jerked him from the floor onto the bed, using enough violent force to cause significant injury." *Id*. at 925. Although Mr. Blazek did not initially complain of pain, the following day he was diagnosed with a

"separated shoulder and an ankle fracture." *Id*. at 922.

Similarly, in *Kukla v. Hulm*, the Eight Circuit also upheld the denial of qualified immunity to an officer who allegedly used excessive force during an arrest. 310 F.3d 1046 (8th. Cir. 2002). In that case, Mr. Kukla alleged that, "although he did not resist arrest or take an aggressive stance, [the officer] forced him against his truck, twisted his arm, and raised it high above his back injuring his collar bone, shoulder, neck and wrist." *Id*. at 1050. Mr. Kukla also complained that his handcuffs were so tight that they broke his wrist despite his repeated requests to loosen his handcuffs. *Id*. The Court explained, "[c]onsidering the circumstances, including the offense at issue, the lack of an immediate safety threat, and the lack of active resistance to arrest, we agree that there is a genuine issue of whether the force used was excessive." *Id*.

In contrast, in *Wright v. St. Louis Board of Police Commissioners*, the Eastern District of Missouri granted an officer qualified immunity on an individual's claim that excessive force had been used during his arrest. 2014 WL 4187797 (E.D. Mo. Aug. 22, 2014). In that case, Mr. Wright alleged that a police officer "opened the door and threw him in the car head first and as [he] tried to get his right leg inside the car, [the officer] slammed the door on his right leg. *Wright*, 2014 WL 4187797 at *1. Although Mr. Wright did not initially feel any pain, the next day he felt "throbbing pain" and "had a knot on his right shin for about two weeks." *Id*. (internal quotation omitted). In declining to hold that the officer used excessive force during that incident, the Court specifically stated "this is not a case where the force was exerted gratuitously; rather it was for the purpose of getting [Mr. Wright] into the police car." *Id*. at *13.

Here, Defendant Crockett was faced with an individual who could not stand on his own or get into Defendant Blocker's patrol car without assistance. As a result, Defendant Crockett lifted him and placed him in the patrol car. Could Defendant Crockett have using greater care in placing Mr. Mason in his patrol car? Perhaps so, but that is not the question before this Court. Like the situation in *Wright v. Board of Police Commissioners,* Defendant Crockett employed force solely for the purpose of assisting Mr. Mason, rather than gratuitously for the purpose of causing harm. The fact that Mr. Mason was compliant at the time of the incident does not change the analysis.

Furthermore, there is no evidence that Mr. Mason complained of any injury at the time of the incident[3]; no evidence that he asked Defendant Crockett to place him in a different position after he was lifted into Defendant Blocker's SUV; and no evidence that he asked Defendant Blocker assist him in any way during his transport to the Detention Facility.[4] Because the force employed by Defendant Crockett was objectively reasonable given the circumstances, Mr. Mason's claim fails, and Defendant Crockett is entitled to qualified immunity.

D. Defendant Blocker

Mr. Mason alleges that Defendant Blocker violated his fourth amendment rights

---

[3] In his deposition testimony, Mr. Mason states that he "*probably* called [Defendant Crockett] a mother-fu\*\*er" and that he "*probably*" told Defendant Crockett that he hurt him, but he did not recall anything more specific or definitive. (#163-5 at p.70; #166-4 at p.18) (emphasis added).

[4] In his deposition testimony, Mr. Mason specifically states, "I told [Defendant Blocker] when I got to the county jail that my hand - - I think my hand's broke." (#163-5 at p.31; #166-4 at p.8)

by failing to intervene to assist him during the incident involving Defendant Crockett. It is "clearly established that a state actor may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of excessive force by another official." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009). Before the Court may impose liability for failing to intervene, however, Mr. Mason must show that "the officer [was] aware of the abuse and the duration of the episode [was] sufficient to permit an inference of tacit collaboration." *Grider v. Bowling*, 785 F.3d 1248, 1253 (8th Cir. 2015).

This claim fails for two reasons. First, the Court has determined that the force employed by Defendant Crockett was objectively reasonable given the circumstances. It follows that Defendant Blocker was not obligated to intervene to protect Mr. Mason.

Second, although Defendant Blocker was standing at or near Defendant Crockett's patrol car when Defendant Crockett lifted Mr. Mason into the car, the incident that Mr. Mason complains of happened within a matter of seconds. Based on the speed and brevity of the situation, it would not have been feasible for Defendant Crockett to intervene. Mr. Mason's claim against Defendant Blocker also fails.

E.  Defendants Holladay and Morgan

Mr. Mason first alleges that Defendants Holladay and Morgan failed to train Defendant Crockett and that the lack of training resulted in the use of excessive force against him. As with the claim against Defendant Blocker, claims against Defendants Holladay and Morgan also fail for two reasons.

First, because the Court has determined that Defendant Crockett did not use

7

excessive force against Mr. Mason, he cannot proceed on this claim against Defendants Holladay and Morgan.

Further, "[s]ection 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights. Rather, [Defendants Holladay and Morgan] can be liable for [Defendant Crockett's] constitutional violation only "if [they] directly participated in the constitutional violation, or if [their] failure to train or supervise the offending actor caused the deprivation." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (internal citations omitted). To succeed on a failure to train claim, Mr. Mason must show that Defendants Holladay and Morgan "(1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberated indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused the injury." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010). Importantly, a "single incident, or series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability." *Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007).

Here, Mr. Mason has failed to come forward with any evidence that Defendant Crockett had a pattern of using excessive force, or more importantly, that Defendants Holladay and Morgan knew of any pattern of unconstitutional conduct. Likewise, Mr. Mason has failed to offer any evidence that Defendants Holladay and Morgan had notice that County training procedures with regard to excessive force were inadequate.

Mr. Mason also claims that Defendants Holladay and Morgan are liable based on their failure to train County employees with respect to inmate medical screening.

8

According to Mr. Mason, he did not receive an adequate medical screening at intake because County officials were not properly trained in providing constitutionally adequate medical screening.

Mr. Mason has failed to come forward with any evidence to show that County officials had a pattern of inadequately screening inmates at intake, or more importantly, that Defendants Holladay and Morgan knew of a pattern of such conduct. Likewise, Mr. Mason has not offered any evidence to show that Defendants Holladay and Morgan had notice that the County training procedures with regard to intake medical screening were inadequate.

## III. Conclusion

The Defendants' motions for summary judgment (#161, #164) are GRANTED. Mr. Mason's remaining claims are DISMISSED, with prejudice.

IT IS SO ORDERED, this 4th day of October, 2017.

_____
UNITED STATES MAGISTRATE JUDGE